United States District Court
Southern District of Texas
ENTERED
August 29, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CHARLES LOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 22-1292 |
| | § | |
| COUGAR DRILLING SOLUTIONS USA, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

In 2015, Charles Lott entered into an Asset Purchase Agreement to sell the assets of his business, Cobra Tool, Inc., to Cougar Drilling Solutions, Inc., and Cougar Drilling Solutions USA, Inc., for a total of $1.5 million. (Docket Entry. No. 13 ¶ 5). As part of that Asset Purchase Agreement, Cougar Drilling and Lott entered into an Employment Agreement. (Docket Entry No. 13-1 at 29).[1] Cougar Drilling agreed to employ Lott at-will as a Project Manager paid $12,500 per month. (*Id.*). Lott was also to receive commission payments in monthly periods that would begin only after Cougar Drilling collected a certain amount of revenues ($2.4 million) from transactions involving certain assets and intellectual property Cougar Drilling had purchased from Cobra Tool. (*Id.* at 31–32). If Lott's employment was terminated, he was to receive severance payments in the same amounts and according to the same terms of what Lott would have been paid but for his termination. (*Id.* at 32). Cougar Drilling's obligation to pay Lott commissions or severance ended if the aggregate commission payment exceeded $3 million and, in any event, after five years. (*Id.* at 31). Cougar Drilling terminated Lott's employment in

---

[1] Page references to the contracts at issue refer to the blue pagination in the footer of those documents.

April 2016. (Docket Entry No. 13 ¶ 15). He has received no commission or severance payments. (*Id.*). The parties' contracts stipulated that Texas law governed. (Docket Entry No. 13-1 at 7, § 1.5).

Lott sued in March 2022, alleging fraud, breach of contract, and unjust enrichment. Cougar Drilling moved to dismiss the complaint. (Docket Entry No. 10). In response, Lott filed an amended complaint that deleted the fraud claim but retained the breach of contract and unjust enrichment claims. (Docket Entry No. 13). Cougar Drilling again moved to dismiss, arguing that the breach of contract claim failed because the Employment Agreement attached to the amended complaint conditioned Cougar Drilling's obligation to pay commissions or severance on Cougar Drilling collecting $2.4 million from transactions involving assets it had purchased from Cobra. The amended complaint did not allege that this condition was met. Cougar Drilling also moved to dismiss the breach of contract claim based on limitations, and moved to dismiss the unjust enrichment claim based on the parties' contracts. (Docket Entry No. 14).

In response to the motion to dismiss the first amended complaint, Lott submitted a non-binding Letter of Intent that preceded the parties' Asset Purchase Agreement and Employment Agreement, (Docket Entry No. 22-2), and moved for leave to amend his first amended complaint, appearing to concede that it should be dismissed. (Docket Entry No. 22 ¶ 18). In this response, Lott agreed that the written contracts between the parties precluded his unjust enrichment claims. (*Id.* ¶ 17). That claim is dismissed with prejudice because amendment would be futile. Lott seeks leave to file another amended complaint to pursue his breach of contract claim and to add a breach of fiduciary duty claim. (*Id.* at ¶ 18). Lott has not filed a motion for leave to file a second amended complaint or attached a proposed amended pleading. Cougar Drilling filed a reply, arguing that even if these procedural defects in seeking leave to

amend are ignored, amendment yet again would be futile, and seeking a dismissal with prejudice. (Docket Entry No. 24 at 4–12).

The parties' arguments are analyzed below.

## I. The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted lawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). A court reviewing a motion to dismiss

under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Proj.*, *Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

**II. Analysis**

Cougar Drilling moves to dismiss because the Employment Agreement, which was part of the Asset Purchase Agreement, conditioned the obligation to make commission or severance payments to Lott on Cougar Drilling reaching certain revenue targets. (Docket Entry No. 14 at 4–5).

The Employment Agreement defines the relevant terms:

> "Commission Period" means every one (1) month period commencing the first day of the month immediately following the month the Company's aggregate Revenues total reaches Two Million Four Hundred Thousand ($2,400,000.00) Dollars[.]
>
> "Revenues" means revenues (net of taxes) generated from the Whipstock Transactions that are actually collected and received by Company less any amounts owing to the Company by the Employee[.]
>
> "Whipstock Transactions" means transactions involving the tangible assets and intellectual property the Company and its affiliate acquired from Cobra Tool, Inc . . . which generate revenues from the sale of whipstocks and rental of whipstock assembly specific items . . . [but] do not include supervision charges . . . ; the rental of other Cougar Drilling Solutions downhole tools . . . ; or directional drilling services and other third party services."

(Docket Entry No. 13-1 at 31, § 1(a), (c) & (d)). "Commission Payments" are calculated as follows:

> From the date the Employee [that is, Lott] commences employment with the Company and for a period of five (5) years thereafter (the "Payment Term"), together with the next Salary Payment immediately after the end of such Commission Period,

> the Company shall pay the Employee twenty-five (25%) percent of the Revenues for such Commission Period (each a "Commission Payment"), if any, until the earlier of (i) the date the Employee has received Commission Payments that amount in aggregate to not more than Three Million ($3,000,000.00) Dollars (the "Maximum Payment"), and (ii) expiration of the Payment Term.

(*Id.* at 31, § 2(a)). If Cougar Drilling terminated Lott's employment for any reason, Lott was entitled to "Severance Payments," calculated in the same manner as the Commission Payments.

> If the Employee's employment with the Company is terminated for any reason whatsoever . . . prior to the Employee receiving the Maximum Payment, the Company shall make severance payments to the Employee at the times and in the manner the Employee would have paid Commission Payments but for termination of the Employee's employment with the Company[.]

(*Id.* at 31–32 § 2(b)).

Cougar Drilling argues that Lott has failed to plead that it ever exceeded $2.4 million in Whipstock Transactions revenue and therefore its obligation to make commission or severance payments could not have been triggered. (Docket Entry No. 14 at 9–10). Cougar Drilling argues that Lott's breach-of-contract claim fails to allege that a condition precedent was met or to allege a breach. (*Id.* at 9 & n.1).-

Lott's amended complaint does not allege that Cougar Drilling earned more than $2.4 million in "Revenue," as defined by the Employment Agreement—a deficiency Lott admits in his opposition. (Docket Entry No. 22 ¶ 16). Lott instead devotes much of his opposition to fleshing out a potential claim for breach of fiduciary duty that he wishes to include in another amended complaint, both to bolster his breach of contract claim and to present an alternative breach of fiduciary duty claim. Finally, Lott concedes that his unjust enrichment claim cannot succeed because the parties' contract covers his claims. (*Id.* ¶ 17). The court accordingly dismisses the unjust enrichment claim, with prejudice, because amendment would be futile. The breach of contract claim, as presently pleaded, is dismissed. The issues are whether the dismissal

of this claim should be with or without prejudice and with leave to amend, and whether Lott should be given leave to amend to assert a breach of fiduciary duty claim.

## III. Leave to Amend

Lott has already amended his breach-of-contract claim once in the face of a previous motion to dismiss. Although, as Cougar Drilling points out, Lott has not filed a proper Rule 15 motion for leave to amend, he has set out the arguments and allegations he would rely on in if he presented his proposed second amended complaint to the court. (Docket Entry No. 22). Those arguments and allegations are addressed below. While a court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), futility of amendment is a proper basis to deny that leave. *Butler v. S. Porter*, 999 F.3d 287, 298 (5th Cir. 2021); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### A. The Proposed Breach of Fiduciary Duty Claim

Lott's proposed breach of fiduciary duty claim rests on an alleged fiduciary obligation by Cougar Drilling "to use its best efforts to commercialize Lott's technology, keep Lott apprised of the status of such efforts by advising him of the amount of qualifying revenues generated, and refrain from selling Lott's technology cheaply, giving it away, or wasting it." (Docket Entry No. 22 ¶ 14).

This claim cannot proceed as a matter of law. Nowhere do the Asset Purchase or Employment Agreement require Cougar Drilling to use its "best efforts," and these contracts contain no language implying such a requirement. Courts do not create fiduciary relationships "lightly," *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997), especially not with respect to arm's-length business transactions like the ones at issue here. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 52 (Tex. 1998) ("There is no general duty of good faith and fair dealing in ordinary, arms-length commercial

transactions."); *S. Plains Switching Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 702 (Tex. App.—Amarillo 2008, pet. denied) ("[T]he duty of good faith and fair dealing does not exist in Texas unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract."). The Asset Purchase and Employment Agreements do not, by their terms, create a fiduciary obligation, and the court will not rewrite those agreements to create one.

Lott points to the Letter of Intent and a Nondisclosure of Confidential Information and Noncompetition and Nonsolicitation Agreement to bolster his proposed fiduciary duty claim. The Letter states that it is not binding on the parties except for an exclusivity provision that does not bear on the issues before the court. (Docket Entry No. 22-2 at 2). Lott relies on one sentence from the Letter not contained in that provision: "Charles, we are truly excited about the prospect of working together to commercialize this technology." (*Id.*). The words "best efforts to commercialize the technology" do not appear in either the Letter, the Asset Purchase Agreement, or any other document before the court. The Letter is explicitly nonbinding, and the Asset Purchase Agreement has a merger clause stating that the Agreement supersedes any prior agreements. (Docket Entry No. 13-1 at 23–24, § 13.2).

Similarly, the Nondisclosure and Nonsolicitation Agreement does not support the proposed breach of fiduciary duty claim. (Docket Entry No. 22-3 at 47–50, §§ 1–2). Lott agreed not to disclose certain confidential information and not to solicit business in competition with Cougar Drilling for a certain period. (*Id.*). The only "special relationship of trust and confidence" to which the Nondisclosure Agreement refers is that arising from the fact that Lott would receive "specialized training and Confidential and Proprietary Information" by Cougar Drilling. (Docket Entry No. 22-3, § 2). This fact was the basis to require Lott not to disclose

certain confidential information he received from Cougar Drilling. This relationship is not a fiduciary relationship, but rather a specific and limited contractual undertaking. The Nondisclosure and Nonsolicitation Agreement did not create an obligation for Cougar Drilling to act as Lott's fiduciary, and Texas law presumes that an employer does not owe its employees such a duty. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) ("[T]here is no duty of good faith and fair dealing in the employment context[.]").

Because, as a matter of law, the relationships between the parties do not give rise to a fiduciary duty on the part of Cougar Drilling, the proposed addition of a breach of fiduciary duty claim would be a futile amendment. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) ("A district court may deny a proposed amendment for futility—meaning the amended complaint would fail to state a claim upon which relief could be granted.") (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000)). The court accordingly denies Lott leave to amend to assert a claim for breach of fiduciary duty.

**B. The Proposed Amendment of the Existing Contract Claim**

As Lott recognizes, the breach of contract claim as pleaded is also deficient. If amended in the manner Lott proposes, it would nonetheless be barred by Texas' four-year limitations period. "Generally a cause of action accrues when facts come into existence [that] authorize a claimant to seek a judicial remedy, when a wrongful act causes legal injury, or whenever one person may sue another." *American Star Energy & Minerals Corp. v. Stowers,* 457 S.W. 3d 427, 430 (Tex. 2015) (internal quotation marks omitted). Under Texas law, when an agreement calls for periodic payments, the cause of action for failure to make the payments accrues at the end of a period if no payment is made when due. *Capstone Healthcare Equip. Servs., Inc. v. Quality Home Health Care, Inc.*, 295 S.W.3d 696, 700 (Tex. App.—Dallas 2009, pet. denied). "The injured party has four years from each breach to bring suit." *Id.* (citation omitted).

Lott's argument that the Employment Agreement allowed Cougar Drilling to defer paying any amounts due until the end of the five-year term, or allowed Lott to wait four years after the five-year term to sue, (Docket Entry No. 22 ¶ 27), is not supported by the text of the Agreement. The Agreement called for monthly payments if and when the conditions to payment arose. (*See* Docket Entry No. 13-1 at 31) (stating that conditional payments "shall" be made "together with the next Salary Payment immediately after the end of each Commission Period [each lasting one month] . . . until the earlier of (i) the date the Employee has received Commission Payments that amount in aggregate to not more than Three Million ($3,000,000.00) Dollars . . ., and (ii) expiration of the Payment Term."). This language does not toll limitations for the full five years.

Furthermore, the discovery rule (which Lott has not pleaded) does not apply here. "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Associates Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (citing *Trinity River Auth. v. URS Consultants*, 889 S.W.2d 259, 262 (Tex.1994); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990)). "Generally, application [of the discovery rule] has been permitted in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 456.

Lott alleges that the first commission payment was due no later than April 2016,[2] when he was terminated, in the form of a severance payment calculated as if he was still working and

---

[2] Presumably, and only if the condition precedent was satisfied, Cougar Drilling had to pay Lott his commission as early as 2015, because the Employment Agreement defines "Commission Period" as "every one (1) month period commencing the first day of the month immediately following the month Company's aggregate Revenues total reaches [$2.4 million], and each commission would be paid

owed a commission payment. Those payments would become due monthly, assuming the Revenue condition precedent was met. (*See* Docket Entry No. 13-1 at 31) (stating that each commission payment was to be made "immediately after the end of each [one-month] Commission Period"). Lott alleges that he received no payments in April 2016 or at any time since. (Docket Entry No. 13 ¶ 15). Lott did not even inquire about the status of Cougar Drilling's commission or severance payment obligations until 2019,[3] (Docket Entry No. 22 ¶ 31), and he identifies nothing that prevented him from doing so earlier. After he asked in 2019 and received an unfavorable response from Cougar Drilling, (*id.*), Lott waited more than two years to file suit. (Docket Entry No. 1-2). Lott was clearly on notice before March 15, 2018—four years before this lawsuit was filed—that Cougar Drilling was not paying severance amounts and was not providing information about its Revenue collection. Because Lott's injury was not "inherently undiscoverable," the discovery rule does not apply. To the extent Lott seeks leave to amend to assert the discovery rule, that request is denied, because such an amendment would be futile.

Next, Lott argues that limitations is overcome by statements in the Asset Purchase Agreement that the representations and warranties set out in sections 5.1(b), (f), (i), (m), and (q) "survive and continue in full force and effect indefinitely." (Docket Entry No. 13-1 at 14, § 6; *see also id.* at 22–23 § 12.4 (stating the same applies for the "Transaction Documents"). The representations and warranties to which the Asset Purchase Agreement refers have nothing to do

---

"together with the next Salary Payment immediately after the end of each Commission Period." (Docket Entry No. 13-1 at 31). Lott's complaint alleges only that Cougar Drilling became bound "[o]n or about April 2016," when Cougar terminated his employment. (Docket Entry No. 13 ¶ 15). This fact does not affect the statute of limitations analysis.

[3] For this fact, Lott's brief cites a "Declaration of Charles Lott," which has not been filed with the court. The court assumes for purposes of this motion that the representation in the brief would be supported by a declaration compliant with 28 U.S.C. § 1746.

with the alleged contract breach at issue. The representations and warranties are as to matters like the places of incorporation and authority to enter into the Asset Purchase Agreement. (*Id*. at 13–14, § 5.2). The statement that the Agreement, once signed, would create "legal, valid and binding obligations of the Purchaser, enforceable against it in accordance with its terms," (*id.* at 14, § 5.2(f)), does not create obligations beyond its terms. Neither affects the limitations issue or tolls limitations.

Finally, Lott directs the court to section 13.5 of the Asset Purchase Agreement, which states that "[t]he failure or delay by a Party in enforcing, or insisting upon strict performance of, any provision of this Agreement does not constitute a waiver of such provision or in any way affect the enforceability of this Agreement . . . or deprive a Party of the right, at any time or from time to time, to enforce or insist upon strict performance of that provision or any other provision of this Agreement." (Docket Entry No. 22, §§ 13.5, 22). But Lott is not a "Party" to the Asset Purchase Agreement. That term is defined in the Agreement to be either the Purchaser—Cougar Drilling Solutions USA Inc. and Cougar Drilling Solutions, Inc.—or the Seller—Cobra Tool, Inc. (Docket Entry No. 13-1 at 3, Declarations; *id.* at 5, § 1.1(aa)). Section 13.5 merely ensures that a party's delay with respect to enforcing the Agreement does not amount to a waiver of its provisions. By its plain terms, section 13.5 does not waive a limitations defense. Texas law precludes reading this language as a waiver of limitations. *See Godoy v. Wells Fargo* Bank, N.A., 575 S.W.3d 531, 539 (Tex. 2019) (a contract provision purporting to "waive[] any and all rights or defense arising by reason of . . . any statute of limitations" is unenforceable) (citing *Simpson v. McDonald*, 142 Tex. 444, 450, 179 S.W.2d 239, 243 (1944) ("It appears to be well settled that an agreement in advance to waive or not plead the statutes of limitation is void as against public policy.")).

Lott therefore cannot recover on a breach of contract claim accruing before March 15, 2018. That does not necessarily bar any claim arising from the Agreements, because "if the terms of a continuing contract call for fixed, periodic performance during the course of the agreement, a cause of action for the breach of the agreement may arise at the end of each period, before the contract is completed." *Capstone*, 295 S.W.3d at 700. The Employment Agreement created a conditional obligation for Cougar Drilling to make monthly payments. If the Revenue condition was triggered, Cougar Drilling may have been obliged to make monthly payments between March 15, 2018, and March 11, 2020, when the conditional obligation terminated. If and when, and only if and when, the Revenue collection condition precedent was met, and Cougar Drilling's monthly severance payment obligation was triggered, a cause of action for breach of contract accrued each time a severance payment was due and not made. Assuming Lott can plead, consistent with Rule 11, that the condition precedent was met so as to require Cougar Drilling to make severance payments between March 15, 2018 and March 11, 2020, the court cannot find that futile, on the present record. The court will allow Lott to amend his complaint to assert a breach of contract based solely on any failure to make severance payments due and owing (meaning that the Revenue collection condition had been met) after March 15, 2018.

This limited leave to amend does not, however, permit Lott to amend to assert a breach of contract claim based on the allegation that Cougar Drilling failed to meet a fiduciary obligation to use its "best efforts" to commercialize the assets it purchased from Lott. In his opposition to the motion to dismiss, Lott appeared to argue that because Cougar Drilling failed to meet its fiduciary obligation to use best efforts to commercialize the asserts, Cougar Drilling did not generate the revenue necessary trigger its obligations to pay commission or severance amounts to

Lott, thereby breaching the contract. Lott's proposed amendment to plead these additional facts and theories for his breach of contract claim is foreclosed by his inability, as discussed above, to plead a plausible cause of action based on an alleged fiduciary duty created by either the contract or other aspects of the parties' relationship.

## IV. Conclusion

Cougar Drilling's motion to dismiss, (Docket Entry No. 14), is granted with prejudice with respect to the claim for unjust enrichment. The motion is granted without prejudice with respect to the claim for breach of contract as to any post-March 15, 2018 failures to make severance payments that were due under the parties' Employment Agreement. The motion for leave to amend is denied with respect to a claim for breach of fiduciary duty, or a claim for breach of contract arising out of a Cougar Drilling's purported fiduciary obligations. Lott's amended complaint must be filed no later than September 30, 2022.

SIGNED on August 29, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge